**In re Damien R. VEAZEY, Alethea K. Johnson–Veazey, Debtors.**

**Edward J. Nazar, Trustee, Plaintiff,**

**v.**

**Allstate Insurance Company; Affiliated Attorneys of Pistonik Law Offices, P.A., a Kansas Professional Association; and Drisko, Fee & Parkins, P.C., a Missouri Domestic Professional Corporation, Defendants.**

**Bankruptcy No. 99–14709.**
**Adversary No. 01–5057.**

United States Bankruptcy Court,
D. Kansas.

Jan. 28, 2002.

---

Alethea K. Johnson–Veazey, Damien R. Veazey, Wichita, KS, pro se.

Edward J. Nazar, Redmond & Nazar, L.L.P., Wichita, KS, for trustee.

W. Thomas Gilman, Wichita, KS, for plaintiff.

Gregory S. Young, Russell B. Cranmer, Wichita, KS, for defendants.

Michael D. Gragert, Gragert, Hiebert & Gray, Thomas J. Lasater, james W. Wilson, James W. Wilson, Chtd., Kathleen N. Wohlgemuth, Martin & Churchill Chtd., Wichita, KS, for creditors.

## MEMORANDUM OPINION GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

ROBERT E. NUGENT, Bankruptcy Judge.

The Trustee moves for summary judgment on his complaint to determine lien rights and to avoid the liens of Affiliated Attorneys of Pistotnik Law Offices, P.A. ("Pistotnik") and Allstate Insurance Company ("Allstate").[1] At the time of debtor's bankruptcy filing, debtor was represented by Pistotnik in a suit for damages caused by an automobile accident. The suit was not resolved at the time of debtor's filing and the trustee rejected debtor's contract with Pistotnik, electing to pursue the claim on behalf of the bankruptcy estate. The trustee's law firm, Redmond & Nazar, L.L.P., proceeded with the case. The trustee filed suit against Laura Marciallas, the alleged tortfeasor, in Sedgwick County District Court, Wichita, Kansas, and the matter was settled for $25,000. Pistotnik claims an attorney's lien for $1,000.00 in attorney's fees and $67.66 in expenses against the settlement proceeds. See Kan. Stat. Ann. § 7–108. Additionally, Allstate claims a lien against the settlement proceeds in the amount of $44,520.05 for personal injury protection (PIP) payments made to the debtor and her medical providers under her automobile insurance policy. See Kan. Stat. Ann. § 40–3113a. The

trustee seeks to avoid these liens, arguing that the assertion of both liens post-petition violates the 11 U.S.C. § 362(a)[2] stay, rendering the liens void. Pistotnik argues that its lien does not violate § 362(a) and is not void because it had a pre-petition interest in the debtor's property which it could perfect by filing notice of its attorney's lien post-petition. Allstate contends that the settlement proceeds obtained by the trustee are duplicative of Allstate's PIP payments to the debtor and that it has a right to reimbursement of its payments under Kan. Stat. Ann. § 40–3113a. After careful review, the Court concludes that both liens are void as violating the stay and that summary judgment should be granted to the Trustee.

## UNCONTROVERTED FACTS

On September 19, 1998, Laura Marciallas, an unlicensed driver, collided with a vehicle driven by Alethea K. Johnson–Veazey as Ms. Veazey proceeded through the intersection of Grove and Central Streets in Wichita, Kansas. According to law enforcement officers working the scene, the accident was caused when Laura Marciallas negligently ran a red light and collided with the left side of Veazey's vehicle near the driver's door. Veazey was alone in her car. Veazey suffered personal injuries. Marciallas' automobile liability carrier was Traders Insurance Company and Professional Claims Management. Veazey's was Allstate.

Initially, Veazey hired Pistotnik to pursue a claim for damages caused by the collision. However, Veazey's claim had not been settled at the time she filed bank-

---

**1.** Defendant Drisko, Fee & Parkins did not file an answer to the trustee's complaint. As a result, an order granting default judgment against defendant Drisko, Fee & Parkins, P.C., in favor of the Chapter 7 trustee was entered on July 10, 2001.

**2.** All references are to the Bankruptcy Code, Title 11, United States Code, unless otherwise noted.

ruptcy and, on February 2, 2000, the trustee rejected Veazey's contract with Pistotnik to pursue the claim on behalf of the bankruptcy estate. On May 31, 2000, Pistotnik asserted an attorney's lien on any proceeds the trustee recovered on behalf of the estate by sending trustee's counsel a letter to that effect. In August 2000, Allstate asserted a lien against any settlement proceeds for PIP payments it made to Veazey and her medical providers under her policy pursuant to Kan. Stat. Ann. § 40–3113a. Allstate's PIP payments totaled $44,520.05, and all but one payment was made before December 16, 1999. The bankruptcy estate did not receive any of the PIP payments.

On September 15, 2000, the trustee filed suit against Marciallas in Sedgwick County District Court on behalf of the estate.[3] Allstate did not intervene in the action against Marciallas although Allstate appears to have been well-aware of the claim. On February 23, 2001, the trustee made demand on Traders to pay its policy limit of $25,000, which Traders agreed to pay. On May 9, 2001, after notice and several hearings, this Court entered an order approving the trustee's settlement with Marciallas for $25,000.

## JURISDICTION

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(K).

## DISCUSSION

The standards governing the consideration and granting or denying of a motion for summary judgment are well-articulated. Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and is applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Rule 56, in articulating the standard of review for summary judgment motions, provides that judgment shall be rendered if all pleadings, depositions, answers to interrogatories, and admissions and affidavits on file show that there are no genuine issues of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Fed. R. Bankr.P. 7056. The defendants have not controverted any facts set forth by the trustee in his motion for summary judgment and accordingly, there are no genuine issues of material fact in this case. Therefore, the Court must determine if the trustee is entitled to judgment as a matter of law.

The trustee first seeks to avoid Pistotnik's attorney's lien as violative of the automatic stay, § 362(a). Section 362(a) provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of—

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

The trustee asserts that Pistotnik's post-petition filing of notice of attorney's lien is void as a violation of the automatic stay because it is an act to perfect its lien against property of the estate.

---

**3.** Sedgwick County Case No. 00 C 2945.

"The validity and extent of an attorney's lien in bankruptcy is determined by state law." *Electronic Metal Prod. v. Bittman (In re Electronic Metal Prod.)*, 916 F.2d 1502, 1504 (10th Cir.1990)(quoting *In re Life Imaging Corp.*, 31 B.R. 101, 102 (Bankr.D.Colo.1983)). In Kansas, there are two types of attorney's liens, retaining liens and charging liens, both created by Kan. Stat. Ann. § 7–108, which states:

> Attorney's lien; notice. An attorney has a lien for a general balance of compensation upon any papers of his or her client which have come into the attorney's possession in the course of his or her professional employment, upon money in the attorney's hands belonging to the client, and upon money due to the client and in the hands of the adverse party, in any matter, action or proceeding in which the attorney was employed, *from the time of giving such notice of the lien to the party;* such notice must be in writing, and may be served in the same manner as a summons, and upon any person, officer or agent upon whom a summons under the laws of this state may be served, and may also be served upon a regularly employed salaried attorney of the party. (emphasis added).

As noted in *Ahalt v. Gatewood*, 109 Kan. 328, 198 P. 970–71 (1921), "a retaining lien is complete and effective without notice to anyone. On the other hand, as a general rule, a charging lien is not perfected until notice thereof has been given to the obligor against whom it is asserted, unless such person has knowledge of the claim, or has notice of facts sufficient to put a prudent person upon inquiry." 198 P. at 971. *See also In re Hodes*, 239 B.R. 239, 243 (Bankr.D.Kan.1999). Pistotnik claims a charging lien, which has been defined as "an equitable right to have the fees and costs due the lawyer for his services secured to him out of the judgment therein." *Id.*

■ Pistotnik's attorney's lien is void. The language of the lien statute is clear— an attorney's lien attaches at the point in time the lien was filed and notice given to the party holding the client's property or funds. *See Carson v. Chevron Chemical Co.*, 6 Kan.App.2d 776, 794, 635 P.2d 1248 (1981); *Carter v. Dunham*, 104 Kan. 59, 177 P. 533, 534 (1919). Pistotnik's lien did not attach, and could not be perfected, until Pistotnik filed and served notice of the lien on the trustee on May 31, 2000, nearly six months after Veazey filed her bankruptcy case. Kan. Stat. Ann. § 7–108 allows an attorney to file notice of its attorney's lien at any time. The word "matter" in the language of the statute enlarges the scope of an attorney's lien to secure attorney fees without regard to whether not an action or proceeding was commenced. *Carter v. Dunham*, 177 P. at 534. Additionally, the language of the statute provides an attorney with a lien on "money due," allowing the attorney to file notice of his lien before judgment is reached. *Id.* A "lien may be created when the claim is one for damages for personal injuries, unliquidated and undetermined by verdict or judgment." *Id. See also K.P. Ry. Co. v. Thacher*, 17 Kan. 92, 101 (1876)("Wherever an action is pending in which money is due, an attorney may establish his lien.") Had Pistotnik filed notice of his attorney's lien at the time he was retained, as allowed by statute, the trustee would not be able to avoid the lien. As noted in *Carter v. Dunham*, "[t]he plaintiff became connected with that matter when he was employed as an attorney to realize on the claim and when he perfected his lien, he could not be disconnected from it, so far as his lien was concerned, by anything his client or his client's adversary might do. In the absence of release, waiver, or forfeiture on his part, he could be disconnected by noth-

ing except satisfaction of his lien." Because Pistotnik had no valid pre-petition interest, serving notice of the lien with the trustee post-petition violated the automatic stay.

■ Pistotnik argues that the filing of notice of its lien should be excepted from the operation of the automatic stay by § 546(b) because it had an interest in the debtor's property pre-petition. Sections 362(b)(3) and 546(b) allow post-petition perfection of liens or other interests in property of the debtor or of the estate only if applicable non-bankruptcy law provides for the perfected lien to be effective against a previously acquired interest in the property.[4] Kansas attorney's charging liens are only effective after notice of the attorney's claimed lien is served on the adverse party, and do not relate back to a date prior to perfection. If perfection of a lien does not have retroactive effect, it does not fall within the § 546(b) exception. *In re Nicholson,* 57 B.R. 672, 676 (Bankr.D.Nev.1986)(listing cases); *In re Electric City Inc.,* 43 B.R. 336, 344 (Bankr. W.D.Wash.1984). There is no dispute that Pistotnik's lien was an act intended "to ... perfect or enforce against property of the debtor [a] lien ... which secure[d] a claim that arose before the commencement of the case." § 362(a)(4). Pistotnik's notice of lien is void as violating the automatic stay and therefore ineffective to encumber the settlement fund in the hands of the trustee.

The trustee also seeks to avoid Allstate's asserted personal injury protection (PIP) lien. PIP liens arise under Kan. Stat. Ann. § 40–3113a(b) which provides, in part—

In the event of recovery from such tortfeasor by the injured person, such person's dependents or personal representatives by judgment, settlement or otherwise, the insurer or self-insurer shall be subrogated to the extent of duplicative personal injury protection benefits provided to date of such recovery and shall have a lien therefore against such recovery and the insurer or self-insurer may intervene in any action to protect and enforce such lien. * * *

The trustee argues (1) that Allstate's lien violates the automatic stay, § 362(a)(4), by attempting to enforce an unperfected lien post-petition, and (2) that the settlement proceeds are not duplicative of the PIP payments made by Allstate to Veazey. Allstate in turn contends that it had a pre-petition interest in the settlement proceeds under Kansas law, thus falling under the exception outlined in § 362(b)(3), and that the settlement proceeds are duplicative of the PIP payments it paid to Veazey.

Before turning to the issue of the attachment and perfection of Allstate's claimed lien, a brief look at the statutory basis for it is necessary. Kan. Stat. Ann. § 40–3113a is part of the Kansas Automobile Injury Reparations Act, Kan. Stat. Ann. § 40–3101, et seq., which embodies Kansas' no-fault insurance scheme. Under the

---

4. Section 362(b)(3) provides,
"(b) The filing of a petition ... does not operate as a stay—
(3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title ..."

Section 546(b) provides,
"(b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that—
(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection;"

Act, all vehicle insurance policies issued to Kansas residents owning vehicles in this state must provide for personal injury protection benefits being paid to the named insureds or their relatives in the event they are injured in a car accident. Kan. Stat. Ann. § 40–3107(f). PIP benefits include funeral, medical, rehabilitation, substitution and survivor's benefits. Kan. Stat. Ann. § 40–3103(q). When an insured is injured in a car accident, the insurer immediately commences payment of these benefits to provide support for the insured irrespective of who is actually liable for the damages. Kan. Stat. Ann. § 40–3113a provides methods for the PIP providers to recoup their payments from the tortfeasor liable for the injuries or the tortfeasor's insurer. Subsection (b), quoted above, provides that "in the event" the insured prevails in an action to recover damages or makes a settlement with the tortfeasor, the PIP insurer is subrogated to the recovery and claims a lien in same to the extent the recovery is duplicative of the PIP benefits the insurer has paid. Kan. Stat Ann. § 40–3113a(b). Should the insured fail to commence an action to recover against the tortfeasor within 18 months of the date of the injury, the insured's cause of action is automatically assigned to the insurer who may prosecute it in the insured's name. Kan. Stat. Ann. § 40–3113a(c).

■ In this case, Veazey's bankruptcy filing intervened before she could file a lawsuit or complete a settlement of her injury claim. The bankruptcy estate did not commence an action until September 15, 2000, well after the bankruptcy filing and also well after the expiration of the 18 month period provided for in Kan. Stat. Ann. § 40–3113a(c). Had there been no bankruptcy filing, the 18 months would have run on March 17, 2000 and, by virtue of her inaction, Veazey's cause of action would have been assigned to Allstate.

However, with the filing of this case, the 18 month period was extended by the operation of § 108(a) which provides that where "applicable nonbankruptcy law ... fixes a period within which the debtor may commence an action, and such period has not expired before the date of filing of the petition, the trustee may commence such action before the later of ... two years after the order for relief." § 108(a)(2). When the trustee filed the Sedgwick County case in September of 2000, the cause of action remained property of the estate and the trustee was well within the statutory time limits of § 40–3113a as well as the applicable statute of limitation, both periods were extended by § 108. After notice and several hearings, this Court approved a settlement and compromise of the Sedgwick County case on May 9, 2001.

Whether or not the settlement proceeds are duplicative of the paid PIP benefits, the Court must determine whether Allstate has a lien or an interest in the settlement proceeds under Kan. Stat. Ann. § 40–3113a(b). The statute provides that "... in the event of recovery from the tortfeasor by the injured person, ... the insurer ... shall be subrogated and shall have a lien against such recovery ...." Kan. Stat. Ann. § 40–3113a(b) (emphasis added). There is no question that the recovery did not occur until well after the bankruptcy filing. For Allstate's lien to be recognized, Allstate must avail itself of the exception to the automatic stay found in §§ 362(b)(3) and 546(b). In other words, if Kan. Stat. Ann. § 40–3113a permits perfection of an interest in the recovery to be effective against an entity acquiring rights in the property before the date of perfection, § 546(b)(1)(A), assertion of the lien post-petition did not violate the stay. Otherwise, asserting the lien post-petition is no less than an "act to create, perfect, or enforce any lien against property of the estate" which is expressly stayed under

§ 362(a)(4). The trustee contends that under the plain language of Kan. Stat. Ann. § 40–3113a(b), Allstate had neither a lien nor an interest in the settlement proceeds at the time the bankruptcy case was filed. The trustee further argues that Kan. Stat. Ann. § 40–3113a(b) does not allow Allstate to perfect its lien or interest post-petition. Allstate asserts that under the statute, its interest in the proceeds arose as soon as the PIP benefits were paid pre-petition and that its lien is superior to all others.

■ At the moment Veazey filed her petition, a bankruptcy estate was created, and all of her interests in property became property of the estate, including her personal injury cause of action. *In the Matter of Faita,* 164 B.R. 6, 8 (Bankr.D.Conn. 1994).[5] Veazey's filing also triggered the automatic stay provision of § 362(a)(4) which provides that the filing of a bankruptcy petition "operates as a stay ... of ... any act to create, perfect, or enforce any lien against property of the estate ...." § 362(a)(4). "This provision of the automatic stay applies to statutory liens, regardless of whether an 'act' is requires to create or perfect the lien." *Faita,* 164 B.R. at 9 (citing *In re Parr Meadows Racing Ass'n, Inc.,* 880 F.2d 1540, 1545 (2nd Cir.1989)).

Allstate contends that although the automatic stay is in effect, the § 362(b)(3) exception applies because it had a pre-petition interest in the settlement proceeds. Section 362(b)(3) provides that the automatic stay does not operate on "any act to perfect an interest in property to the ex-

tent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title..." § 362(b)(3). Section 546(b)(1)(A) states that the trustee's avoiding powers "are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." § 546(b)(1)(A). This exception applies "where a creditor has a pre-petition interest in property that can be perfected under state law at a time after a third party has acquired interest in the property." *229 Main Street Ltd. P'ship v. Commonwealth,* 251 B.R. 186, 190 (D.Mass.2000) (citations omitted). State law defines whether Allstate has an interest in the settlement proceeds. *See Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). For Allstate to succeed, Allstate (1) must have had a pre-petition interest in Veazey's recovery on her personal injuries, and (2) Kan. Stat. Ann. § 40–3113a(b) must permit perfection of that interest to be effective against all others. *Faita,* 164 B.R. at 9 (citing *Parr Meadows,* 880 F.2d at 1546). The acquisition of an interest in property and the creation of a lien securing that interest do not need to occur simultaneously. *Id.* (citation omitted).

While it is undisputed that Allstate paid PIP benefits, nothing in the Reparations Act suggests that it had any property interest in debtor's cause of action at any time. The plain meaning of the subsections of Kan. Stat. Ann. § 40–3113a read

---

**5.** *See* 11 U.S.C. § 541(a), which provides:

The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) ...[A]ll legal or equitable interest of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a). *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6322 (Code § 541(a)(1) "include[s] choses in action and claims by the debtor against others...."). *Faita,* 164 B.R. at 8 fn. 4.

494

*in pari materia* makes this apparent. As noted above, Kan. Stat. Ann. § 40–3113a(c) provides for the insured's inaction to pursue its claim operating as an assignment of the claim to the insurer. If the insurer already had an interest in the cause of action, subsection (c) would be surplusage. If subsections (a) and (c) are read together, the insurer's interest only arises when (i) the insured obtains a recovery before the 18 month period ends or (ii) after the 18 months has elapsed without the insured's pursuing the claim. Absent controlling Kansas appellate court authority, the Court has no choice but to interpret the statute in this way.

As Allstate argues, other courts have held in other contexts that claimants acquired an interest in the debtor's property at the time the property was identified and valued. In *Parr Meadows*, for instance, the Second Circuit held that a county seeking to enforce a tax lien filed post-petition had acquired an interest in the debtor's taxable property on the "tax status date" (which occurred pre-petition) when the taxable, lienable property was identified and valued. 880 F.2d at 1546–47. That Court found that, pursuant to New York law, taxation of land and the state's interest in the land begin on the "tax status date" as of which all realty is "valued according to its condition." *See* N.Y. Real Prop. Tax Law § 302, quoted at 880 F.2d at 1546. Allstate also relies heavily on *229 Main St. Ltd. P'ship v. Commonwealth*, 251 B.R. 186 (D.Mass.2000) in which the District Court affirmed a Bankruptcy Court's holding that a post-petition environmental superlien imposed under state law against the debtor property owner to secure a claim for environmental clean up did not violate the automatic stay. The applicable state law, Mass. Gen. L. c. 21E, § 13, provides for the placement of a lien on the real property owned by persons liable for environmental cleanup expenses when a statement of claim is filed against the land in the real property record. Moreover, any such filed lien is accorded priority status over any other previously filed encumbrance. The Court then found that when the cleanup authority issued a notice to the debtor of its intent to file a lien, thus triggering an administrative process which the bankruptcy interrupted, the state acquired an interest in the debtor's property which could be perfected post-petition under § 546(b). These Courts both found that the statutory schemes underlying the asserted liens provided for the claimants to have a pre-petition property interest.

█ Kansas' PIP lien statute makes no such provision. The statute plainly provides that the insurer's interest arises "in the event of recovery" and not before. Kan. Stat. Ann. § 40–3113a(b) does not provide for attachment or perfection of the insurer's interest until after recovery is made from the tortfeasor. "[A]lthough the Bankruptcy Code does not define 'perfection,' ... [t]o perfect a lien or other security interest is to satisfy all conditions necessary to make the lien effective against third parties. ..." *In re Microfab, Inc.*, 105 B.R. 152, 157 (Bankr.D.Mass.1989). The only condition set forth in Kan. Stat. Ann. § 40–3113a(b) is that the injured party recover from the tortfeasor. At that time, the insurer's interest in duplicative PIP benefits becomes an enforceable lien, without any further action by the insurer. The statute does not provide that the lien relates back to the date when PIP benefits were paid, nor does it accord the lienholder any sort of priority. Because it does not provide for the insurer to acquire a priority over previously acquired interests upon perfection, the PIP lien asserted by Allstate does not fit into the § 546(b)(1) exception and its attachment and perfection breaches the stay. One other bank-

ruptcy court has so held. In *Matter of Faita,* 164 B.R. 6 (Bankr.D.Conn.1994), the Court interpreted the Connecticut PIP lien statute (which is very similar, although not identical, to the Kansas statute) and found that, while the statute conferred an interest in the insured's cause of action when the benefits were paid, the lien it conferred only attached when the insured received the recovery. Because that statute, like Kansas law, does not provide for the lien to be "effective against an entity which acquires rights in the such property before the date of such perfection," § 546(b)(1), that Court held that the § 362(b)(3) exception to the stay did not apply. 164 B.R. at 10–11.

■ With the determination that All-state's PIP lien is void as violating the automatic stay, determining whether the settlement received by the trustee duplicated the PIP benefits is not critical to deciding this motion. However, it does appear to the Court that if Allstate's PIP lien were found to fall within the § 362(b)(3) exception, the settlement proceeds paid by the tortfeasor's insurer to the trustee were duplicative of the PIP payments paid by Allstate to Veazey. In determining the right of an insurer to reimbursement for PIP benefits paid under Kan. Stat. Ann. § 40–3113a(b), the PIP benefits are *presumed* to be included in any recovery effected by an injured insured, either by way of settlement or judgment, in the absence of proof to the contrary, and the burden of supplying such proof is upon the insured, here, the trustee. *See State Farm Mut. Auto. Ins. Co. v. Kroeker,* 234 Kan. 636, 644, 676 P.2d 66 (1984); *Easom v. Farmers Ins. Co.,* 221 Kan. 415, 560 P.2d 117 (1977). Additionally, if the injured insured settles his *total claim* with the tortfeasor, including those elements of damage represented by PIP

benefits, and releases the tortfeasor from all further liability, the recovery is duplicative as a matter of law, and the PIP carrier has a lien and is entitled to reimbursement for the total amount of PIP benefits paid out of the recovery made by the insured. *Kroeker,* 234 Kan. at 645, 676 P.2d 66 (citing *Russell v. Mackey,* 225 Kan. 588, 594, 592 P.2d 902 (1979)). The exhibits provided by the trustee show that he settled Veazey's total personal injury claim against Marciallas for $25,000.[6] Marciallas' attorney corresponded with the trustee agreeing to settle the case for the policy limits of $25,000 in return for a Release and Settlement Agreement, approval by the Bankruptcy Court, and a Journal Entry of Dismissal With Prejudice, which compromise and settlement was approved by the bankruptcy court on May 9, 2001. Thus, as a matter of law, the settlement proceeds were duplicative of the PIP benefits paid by Allstate to Veazey.

Because Allstate's interest in the proceeds did not arise until after the bankruptcy case was filed, and because its lien is not effective against interests acquired before its perfection or attachment, Allstate has no interest in the recovery in the hands of the trustee.

The Trustee's Motion For Summary Judgment is GRANTED.

IT IS SO ORDERED.

---

6. Trustee's Exhibit L, M.